UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
COVINGTON

CRIMINAL ACTION NO. 05-45-DLB

UNITED STATES OF AMERICA                                                    PLAINTIFF

VS.                    OPINION AND ORDER
                    GRANTING MOTION TO QUASH

PHILLIP WELDON                                                              DEFENDANT

*******************************

The government has filed a motion to quash Defendant Weldon's trial subpoena duces tecum issued to the Kenton County Police Department for all "arrest records and investigation reports for all persons arrested at the Extended Stay at 650 West 3rd Street, Covington, KY 41011, for 2004 and 2005." (Doc. #98) Weldon has filed a memorandum in opposition to the motion to quash on various grounds. (Doc. # 100). The government having submitted its reply (Doc. # 102), the matter is ripe for the Court's review. For the reasons set forth herein, the motion to quash subpoena will be **granted**.

## Summary of Arguments

In its motion to quash, the Assistant United States Attorney attacks the trial subpoena on both procedural and substantive grounds. More particularly, because the subpoena requests that the records be produced to the defense attorney's office rather than to Court, the government argues that the subpoena does not comply with Rule 17, of the Federal Rules of Criminal Procedure. Although Rule 17(c)(1) does allow the Court to direct witnesses to produce records in court prior to trial, the rule requires such early

1

production by Court order, as opposed to a simple request by defense counsel. Substantively, the government argues that because the requested records are irrelevant to any legitimate issue, the subpoena should be quashed.

In response, Weldon first argues the government lacks standing to challenge the subpoena because it has no proprietary interest in the arrest records and investigation reports. Weldon also argues that there has been no claim made by the government that the information sought is privileged. According to Weldon, "if the Kenton County Police Department wants to object to the subpoenas, its Commonwealth Attorney certainly knows how to do so." Weldon goes one step further and boldly states "[a]t bottom, it appears that the Assistant U.S. Attorney is cognizant that Kenton County is engaged in illegal profiling and is seeking to prevent its exposure." (Doc. #100, p. 3)

Weldon also argues that even if the government has standing to challenge the subpoena, the requested documents and records should be produced pursuant to the four-part test established in *United States v. Nixon*, 418 U.S. 683 (1974).[1] First, Weldon argues that the requested documents are evidentiary and relevant to his theory of defense. Although he does not specifically state within his response what that theory is, he asserts that he has "stated numerous times in open court why the recently requested documents are necessary, and, in the interest of judicial economy, will not again repeat his evidentiary

---

[1] The Supreme Court in *Nixon* held that in order to require production before trial, the moving party must show (1) that the documents are evidentiary and relevant; (2) that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and (4) that the application is made in good faith and is not intended as a general "fishing expedition." 418 U.S. at 699.

theory herein." (Doc. #100, p. 4). For purposes of adjudicating the motion to quash, the Court presumes that Weldon's argument is that the subpoenaed documents will corroborate his theory that he was initially approached and later arrested because of his race, and the Extended Stay Hotel and Kenton County Police Department engage in unlawful racial profiling. Second, Weldon argues that because the police will not disclose the records without a subpoena, the requested documents are not otherwise procurable. Third, based on his proposed racial profiling defense, Weldon argues that he cannot adequately prepare for trial without pretrial disclosure of the documents. Fourth, Weldon contests the government's characterization of the subpoena as a "fishing expedition," and argues that the documents are critical to a proper presentation of his defense theory that he was singled out for prosecution because of his race.

## Analysis

**A.    With or without standing to move to quash the subpoena duces tecum, the Court has the inherent authority to review the propriety of trial subpoenas issued pursuant to Rule 17.**

Rule 17(c) not only permits the Defendant to reach Rule 16 materials for use at trial, but also (subject to the provisions of Rule 17(c)(2)) permits the use of a trial subpoena to obtain for use at trial materials that are outside the scope of Rule 16 "as long as they are evidentiary." *Bowman Dairy Co. v. United States,* 341 U.S. 214, 219 (1951). The court assesses and controls the extent to which the Rule is used in a good-faith effort to obtain evidence "by its power to rule on motions to quash or modify." *Id.* at 220. "Rule 17(c) was not intended to provide an additional means of discovery." *Id.* Rather, its purpose is trial-focused and it therefore may be used only to obtain materials admissible as evidence at

trial. *See id.* at 220-21.

The Court rejects Weldon's standing challenge. Although the United States does not possess the records sought to be obtained via subpoena, the motion to quash was filed by the government attorney at the request of the investigating officer of the Kenton County Police Department. The fact that the witness is not also the custodian of the records sought is of no consequence. Additionally, even if the Court agreed with Weldon that the government lacks standing to challenge the subpoena, because the subpoena was issued with the imprimatur of the Court, the Court has the inherent power to review the subpoena to determine if it seeks information which would be relevant and admissible at trial.

Rule 17(c), which provides for the issuance of subpoenas duces tecum, provides, in relevant part:

> A subpoena may order the witness to produce any books, papers, documents, data, or other objects the subpoena designates. *The court may direct* the witness to produce the designated items in court before trial or before they *are to be offered in evidence*. When the items arrive, *the court may permit* the parties and their attorneys to inspect all or part of them.

Fed.R.Crim.P. 17(c)(1) (emphasis added).

> On motion made promptly, *the court may quash* or modify the subpoena if compliance would be unreasonable or oppressive.

Fed.R.Crim.P. 17(c)(2) (emphasis added).

Thus, the language of the Rule 17(c) plainly gives the Court the authority to review subpoenas duces tecum to determine if the items sought are relevant and would be admissible at trial.

As established by the *Nixon* decision, in order to require production before trial, the moving party must show: (1) that the documents are evidentiary and relevant; (2) that they

4

are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and (4) that the application is made in good faith and is not intended as a general "fishing expedition". In this case, it is undisputed that the information and documents Weldon seeks are not otherwise procurable reasonably in advance of trial. The Court need only consider the relevance prong of the first criterion and the necessity-for-trial-preparation prong of the third criterion, for it is clear on the current record that Weldon has failed to make the requisite showing for either.

      **B.**     **The requested documents are neither relevant nor admissible**

Weldon argues that the requested documents are critical to his defense of racial profiling. According to statements made by Weldon's defense counsel during several court proceedings, he intends on arguing that the Extended Stay Hotel discriminates against African-Americans, and that he was a victim of that discrimination. According to Weldon, but-for the racially profiling which occurred herein, he would have never been approached by the officers and ultimately arrested.

Racial profiling can constitute a deprivation of a citizen's constitutional right to equal protection of the laws. U.S. Const. amend. XIV; *Whren v. United States,* 517 U.S. 806, 813 (1996) (holding that claims asserting selective enforcement of a law on the basis of race are properly brought under the Equal Protection Clause, and that the right to equal protection may be violated even if the actions of the police are acceptable under the Fourth Amendment); *United States v. Avery,* 137 F.3d 343, 352 (6th Cir. 1997) ("the Equal

Protection Clause of the Fourteenth Amendment provides citizens a degree of protection independent of the Fourth Amendment protection against unreasonable searches and seizures.").

In this case, the Court has previously rejected Weldon's Fourth Amendment challenge to the officers' consensual encounter with him inside his hotel room, as well as the challenge to the validity of his arrest and subsequent search incident to that lawful arrest. However, in adjudicating the government's motion to quash, the Court must go a step further and analyze Weldon's claim of unlawful racial profiling in this particular case.[2]

To establish a claim of racial profiling, Weldon must demonstrate that the officers' actions had a discriminatory effect and were motivated by a discriminatory purpose. *United States v. Armstrong,* 517 U.S. 456, 465 (1996). The Sixth Circuit has stated that when "an officer initially targets someone *solely* because of his race, without additional factors.... [s]uch actions [are] constitutionally impermissible, violative of the Equal Protection Clause." *United States v. Avery,* 137 F.3d 343, 353-54 (6th Cir. 1997) (emphasis added). Simply put, the use of race as the sole factor in deciding to approach or stop an individual violates the Fourteenth Amendment. *Id.*

In adjudicating Weldon's Fourth Amendment challenge, the Court previously made several factual findings which are relevant to resolving his Fourteenth Amendment Equal Protection claim. These facts include the following:

- C    On the evening of February 3, 2005, Kenton County Police Officer Brett Benton received a telephone call from Officer Andy Muse, who reported that he had received information from the Extended Stay Hotel in Covington,

---

[2] A general claim of racial profiling will be insufficient. Weldon must show that he was specifically targeted in this case because of his race. *Avery,* 137 F.3d at 353-54.

6

    Kentucky, that two individuals had arrived at the hotel in separate vehicles, at different times, and were staying in different rooms. However, both individuals gave the same street address in Texas. Benton took down the information, noting that an individual named Darryl Gant was staying in Room 108, and one named Tamera Simmons was staying in Room 410;

C  Since 2002, Officer Benton has been a certified canine handler with the Kenton County Police Department. His partner "Tommy" is also certified and trained to detect various controlled substances, including cocaine. Tommy's signal for a positive alert is to lie down.

C  At approximately 11:00 p.m., Benton and Tommy proceeded to the Hotel and Benton had Tommy sniff the exterior door to every room on the first floor of the west wing of the Hotel. Tommy laid down in front of the door to Room 108, but did not give a positive alert to any other room on that floor. This observation was confirmed by hotel security guard Betty Davidson. Benton and Tommy followed the same procedure on the fourth floor, where Tommy gave a positive alert to Room 410, but no other room.

C  After returning Tommy to his vehicle, Officers Benton and Caldwell knocked on the door to Room 108. Defendant Weldon answered the door and when asked, gave the officers consent to search the room. Weldon also provided what was discovered later to be a fake Texas driver's license in the name of Darryl Gant. The officers seized nothing during their search, although they observed a large amount of cash and three cell phones. No drugs were found inside Room 108.

Based on these facts, the Court finds that the officers had several legitimate, non-race related reasons for knocking on the door to Room 108 that evening, not the least of which was the positive alert by a trained and certified drug detection dog. *See United States v.* Robinson, 390 F.3d 853, 874 (6th Cir. 2004) (A positive indication by a properly-trained dog is sufficient to establish probable cause for the presence of a controlled substance). Thus, pursuant to the Sixth Circuit's *Avery* decision, there is no factual basis for Weldon's assertion that he was approached by the officers in this case solely because

of his race.³  *Avery*, 137 F.3d at 353-355.

The following facts further support the Court's decision rejecting Weldon's claim of racial profiling. After the officers left Room 108, they proceeded to Room 410, where they encountered Tamera Simmons, who told the officers that she had arrived with another individual named "Darryl." Simmons told the officers that he had brought the cocaine to her room and left it on her night stand.⁴

In an effort to locate "Darryl," Officer Caldwell went downstairs to watch Room 108. Upon arrival, the security guard told him that the occupant of Room 108 had left the Hotel by a side door. Officer Caldwell conveyed that information to Benton, who radioed other officers who were en route and told them to look for the individual. "Darryl" was eventually located at the nearby Holiday Inn. By that point in time, the officers had learned of the connections between Simmons and Weldon, had been told that the cocaine belonged to Weldon, and had observed Simmons' cell phone in Weldon's room. None of this information was dependent on Weldon's race in any way, shape, or form.

"Darryl" was thereafter returned to the Extended Stay Hotel in handcuffs in the back of their cruiser. When asked for his name, the individual again gave the name of "Darryl Gant." Officer Benton thereafter informed the man that it was a criminal offense in Kentucky to provide false identification and was then given the name of Phillip Weldon.

---

³ To the extent Weldon argues that hotel staff targeted him because of his race, any argument in that regard also fails because the hotel staff is not a state actor for purposes of the Fourteenth Amendment. Moreover, the unusual circumstances surrounding the check-in of Simmons and Weldon were suspicious enough to warrant further investigation.

⁴ Although Weldon continues in his pleadings to contest the veracity of Simmons' statements to the officers, the officers were entitled to rely upon that information in conducting their investigation.

Officer Benton checked for warrants and learned that Weldon had an outstanding warrant in Texas. Weldon was then arrested. The fact that Defendant Weldon gave the officers a false name has nothing to do with his race.

Based on these facts, there is no basis for any claim that Defendant Weldon, as opposed to other unnamed offenders, was approached, detained, and later arrested due to his race. Weldon's allegations fail to raise a claim for racial profiling in violation of his Fourteenth Amendment Equal Protection rights. For these reasons, any information subpoenaed from the Kenton County Police Department regarding other defendants is irrelevant in this case and would not be admissible at trial.[5]

Accordingly, as Weldon has failed to satisfy the first and third prongs of the four-part *Nixon* test, **IT IS ORDERED THAT** the motion to quash (Doc. #98) be, and is hereby **granted**.

This 7th day of April, 2006.



Signed By:
*David L. Bunning*   DB
United States District Judge

G:\DATA\ORDERS\CovCrim\2005\05-45-Order Granting Motion to Quash Subpoena.wpd

---

[5] For sake of completeness, even if the information subpoenaed by Weldon did reveal a higher percentage of African-Americans had been arrested at the Extended Stay Hotel than other races, because the facts in *this* case show Weldon was approached, detained, and arrested for reasons other than his race, he cannot show his own individual Equal Protection rights under the Fourteenth Amendment were violated.